# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMY WALKER, | ) |
| | ) |
| v. | ) Case No. CIV-16-703-D |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) |
| Defendant.[1] | ) |

## REPORT AND RECOMMENDATION

Plaintiff Amy Walker seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB). This matter has been referred by United States District Judge Timothy D. DeGiusti for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

## I.   Procedural Background

Plaintiff filed an application for DIB on January 9, 2013, alleging disabilities beginning October 1, 2010. Administrative Record (AR), [Doc. No. 7], 18. After the Social Security Administration (SSA) denied her application initially and on reconsideration, Plaintiff requested and was granted a hearing before an administrative law judge (ALJ) held on August 14, 2013. At

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Nancy A. Berryhill, Acting Commissioner of Social Security Administration, as the proper Defendant in this action.

the hearing, Plaintiff amended her alleged onset date to June 6, 2011. *Id.* The ALJ issued an unfavorable decision on January 15, 2015. AR 18-33. On appeal, the Social Security Appeals Council denied Plaintiff's request for review. AR 1-5. Thus, the ALJ's decision became the final decision of the Commissioner and is the subject of this judicial review.

**II.     The ALJ's Decision**

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since the amended onset date. AR 20.

At step two, the ALJ determined Plaintiff's severe impairments include bilateral carpal tunnel syndrome; degenerative disc disease; and headaches.

At step three, the ALJ found none of Plaintiff's impairments meets or medically equals any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22-23.

At the first phase of step four, the ALJ determined Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to perform occasional handling and fingering with her dominant right hand.

AR 23. At the second phase of step four, the ALJ considered both the testimony of a vocational expert (VE) and information from the Dictionary of Occupational Titles (DOT). The VE identified one of Plaintiff's past jobs as "retail assistant manager," DOT 189.167-018, and testified Plaintiff could perform the duties of the job. Consistent with the ALJ's RFC determination, this job is

classified as light work requiring only occasional handling and fingering. AR 31. At the third phase of step four, the ALJ determined Plaintiff could perform the duties of this job.

Without further benefit of testimony from the VE, the ALJ made an alternative step-five finding. Using the Medical-Vocational Guidelines (the grids)[2] as a framework, the ALJ found Plaintiff could also perform other jobs existing in significant numbers in the national economy. AR 32-33. Specifically, the ALJ found Plaintiff, at age 29 on the alleged date of disability onset and age 33 on the date of the hearing, to be a "younger individual" age 18-49, *see* 20 C.F.R. § 404.1563, with at least a high school education and the ability to communicate in English. 20 C.F.R. § 404.1564. Considering a person of Plaintiff's age, with her vocational characteristics and educational background, the ALJ determined under the grids that transferability of skills was not material to his determination of disability.[3] AR 32. *See* 20 C.F.R. § 404, Subpart P, Appendix 2. Having found that Plaintiff's manipulative and exertional limitations had "little or no effect on the occupational base of unskilled, light work," the ALJ alternatively determined Plaintiff is not disabled at step five of the sequential evaluation. AR 32.

---

[2] The Grids are tables that direct a determination of "disabled" or "not disabled" based on intersecting considerations of a claimant's age, work experience, education, and residual functional capacity. *See Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993);

[3] When a claimant cannot perform her past relevant work, having transferable skills—especially when the claimant is limited to sedentary work—becomes more important with age. "For individuals who are under age 45, age is a more advantageous factor for making an adjustment to other work. It is usually not a significant factor in limiting such individuals' ability to make an adjustment to other work, including an adjustment to unskilled sedentary work, even when the individuals are unable to communicate in English or are illiterate in English."

20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 201.00(h)(1).

### III. Issues Presented for Judicial Review

Plaintiff raises one issue: she contends the ALJ erred "when he found a limited range of light work, but all of his step 2 findings were not reflected at step 5." Pl.'s Brief, [Doc. No. 9], 2-10. The statement of the issue is inartfully drafted. As her opening brief reflects, Plaintiff is challenging the ALJ's failure to properly consider medical opinions in the record and his failure to reconcile conflicting opinions of medical sources.

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it, or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. Analysis

Plaintiff contends the ALJ failed to account for functional limitations from all severe impairments identified at step two of the sequential evaluation. In his summary of step two impairments, the ALJ identified bilateral carpal tunnel syndrome, degenerative disc disease and headaches as severe impairments. But in his discussion of these impairments, the ALJ noted the minimal, sporadic treatment for degenerative disc disease and headaches and concluded any functional limitations from these impairments were "temporary." Ultimately, the ALJ determined these impairments were not "severe." AR 20. To the extent the ALJ erred in including degenerative disc disease and headaches among her severe impairments at step two of the sequential evaluation process, that error is harmless. At step 2, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. *See Dray v. Astrue*, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009). "Thus, step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Id.* (*quoting Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)). Because the conclusion that a claimant has at least one severe impairment requires the ALJ to proceed to the next step of the sequential evaluation, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe." *Id.* If failure to identify an impairment as "severe" at step two is harmless error, so long as the ALJ proceeds beyond step two, then the converse must be equally true; overinclusion of impairments at step two is likewise harmless error.

Plaintiff also challenges the ALJ's omission of any functional limitations from carpal tunnel syndrome of the left hand. But Plaintiff does not specify what functional limitations persisted after her apparently successful carpal tunnel release surgery on her left wrist. The

5

medical records generated by her surgeon, Dr. Kenneth A. Hieke, recounting follow-up treatment after the August 19, 2011 surgery on her left hand, do not indicate any problems or limitations in the use of her left hand after it had healed. AR 257-268. Moreover, subsequent EMG/nerve conduction testing of her left hand was normal. AR 401-402.

The same is not true regarding Plaintiff's alleged functional limitations in using her right, dominant hand. After she underwent surgery for carpal tunnel and cubital tunnel release on her upper right extremity, Plaintiff continued to complain about residual pain and functional limitations in her right hand. *See* AR 243; 395; 401-403; 415-422; 423-426. Several of these records reference poor grip strength in her right hand. EMG/nerve conduction testing of her right hand indicated borderline evidence of carpal tunnel syndrome on the right. AR 402.

In the RFC, the ALJ found Plaintiff could occasionally handle and finger with her right, dominant hand. Plaintiff correctly notes this finding is directly contradicted by the medical opinion of Dr. David J. King, D.O., a consultative examiner. AR 328-334. Dr. King examined Plaintiff at the request of the State of Oklahoma Disability Determination Division on February 16, 2013. In his answer to a question on a standardized form as to whether Plaintiff could "effectively grasp tools such as a hammer," Dr. King wrote, "yes left no right." AR 334. The ALJ recited the findings and opinions of all the medical sources included in the administrative record. But he did not state the weight he was affording Dr. King's opinion or why.

In fact, the ALJ did not state the weight he was giving to any opinion of any medical source except for that of the State agency physician who reviewed the objective medical evidence and concluded Plaintiff has no severe physical impairment. AR 5. The ALJ stated:

> The findings of no severe physical limitation have been given some limited weight as generally consistent with the objective medical evidence; however, to be fully consistent with the totality of the treating medical records and overall record in its

6

entirety, the light exertional level of work with manipulative limitations have been reflected in the determination of the claimant's residual functional capacity."

AR 30.4

The ALJ's duties include evaluating all medical opinions in the record, assigning weight to each opinion, and discussing the weight given to each. *See* 20 C.F.R. § 404.1527(c); *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "An ALJ must evaluate every medical opinion in the record, . . ., although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citation omitted). The ALJ must explain with valid reasons the choice of a medical source's opinion over another when the opinions differ. *Quintero v. Colvin*, 567 Fed. Appx. 1208, 1215 (10th Cir. Jun. 5, 2014); *see also Reveteriano v. Astrue*, 490 Fed. Appx. 945, 947 (10th Cir. 2012) ("[T]o the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§ [404.1527(c)] and [416.927(c)]."). The ALJ's failure to weigh a medical opinion can be considered "harmless" only if, "there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578–579 (10th Cir. 2014). "Additionally, '[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.' SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996)." *Sullivan v. Colvin*, 519 Fed. Appx. 985, 988 (10th Cir. Mar. 13, 2013).

---

4 Even though the ALJ stated the weight he was giving this medical source opinion, he did not explain what factors he had considered in determining the weight. It appears the ALJ revealed the weight he was giving this opinion so that his RFC would not be inconsistent with the findings of the State agency physician.

7

In this case, the ALJ's RFC conflicted with the opinion of Dr. King. An explanation for this obvious conflict is absent from the ALJ's decision. Plaintiff's past relevant work, as identified by the VE, requires occasional handling.5

The ALJ's decision cannot be salvaged by resorting to the alternative step-five finding. The ALJ found Plaintiff could perform work at the light exertional level.6 The ALJ purportedly relied on SSR 83-14 in determining Plaintiff's nonexertional limitation to occasional handling had "little or no effect on the occupational base of unskilled light work." AR 32. The ALJ stated:

> [T]he claimant does not require the use of the fingers for fine activities to the extent as required for sedentary work. Further, light unskilled work generally requires work with things rather than with people.

AR 32.

But SSR 83-14 contradicts the ALJ's finding regarding the effect of a limitation to "occasional handling" on the occupational base of light work:

> Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, *they require gross use of the hands to grasp, hold, and turn objects*. Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base.

SSR 83-14, 1983 WL 31254 at *4 (emphasis added).

---

5 "Handling" is defined in the *Selected Characteristics of Occupations as Defined in the Revised Dictionary of Occupational Titles* as "Seizing, holding, grasping, turning, or otherwise working with hand or hands. Fingers are involved only to the extent that they are an extension of the hand, such as to turn a switch shift automobile gears." SCODICOT Appendix C.

6 "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8

The ALJ did not ask the VE to determine the impact of a limitation to occasional handling on the occupational base of unskilled light work. And the ALJ's decision is contrary to SSR 83-14. Thus, in addition to the legal error discussed above, the ALJ's alternative step-five finding is not supported by substantial evidence in the record.

The Commissioner notes the ALJ "thoroughly discussed and reviewed all of the evidence of record[.]" [Doc. No. 13], 14. And she is right. But a mere summary of medical records, no matter how thorough, is not enough.[7] The ALJ's failure to explicitly state the weight he was affording to each medical opinion, along with his failure to reconcile conflicting opinions, is fatal to the Commissioner's final decision. Affirming this decision would require this Court to attempt to rehabilitate the ALJ's decision by offering belated justifications for the weight assigned to the opinions of medical sources; therefore, this problem cannot be fixed on appeal and must be repaired by the ALJ on remand. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir.2008) ("Judicial review is limited to the reasons stated in the ALJ's decision; the magistrate judge should not have supplied possible reasons for rejecting a physician's opinion in order to affirm."). Thus, it is recommended that this decision be remanded to the ALJ for a proper evaluation of the medical opinions in the record.

## **RECOMMENDATION**

For the reasons set forth herein, it is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

---

[7] *See* 20 C.F.R. § 404.1527(c); *Keyes-Zachary*, 695 F.3d 1161; *Hamlin*, 365 F.3d 1215; discussed *supra* at 6-7.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by May 15, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 1st day of May, 2017.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE